## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLIANN BOLASH, GENEVA GOLDSTEIN, DEBORAH JOHNSON, INGRID NIN, and JULES PURNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEVA CONCEPTS, LLC, d/b/a DevaCurl,<br><br>Defendant. | Civil Action No.: 20-CV-2045<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Kelliann Bolash, Geneva Goldstein, Deborah Johnson, Ingrid Nin, and Jules Purnell (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), bring this class action against Defendant Deva Concepts, LLC, d/b/a DevaCurl ("DevaCurl" or "Defendant") and allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge.

### <u>NATURE OF THE ACTION</u>

1.      This case arises out of Defendant's defective hair-care Products that are marketed as premium, high quality, safe, and healthy for people with curly hair.

2.      Customers relied on Defendant's omissions and representations about the Products when purchasing the Products.

3.      The Products cause scalp irritation, hair loss, excessive shedding, hair thinning, and balding when used as directed.

4.    Defendant knew that the Products, when used as directed, caused scalp irritation, hair loss, excessive shedding, hair thinning, and balding since 2011 or earlier due to, *inter alia*, the high volume and frequency of public complaints about the Products.

5.    Defendant was negligent in the design and manufacture of the Products and in failing to warn customers of the adverse effects of the Products, Defendant breached express and implied warranties, Defendant's conduct constitutes unfair and deceptive trade practices, and Defendant was unjustly enriched.

6.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured in fact, including economic damages.

## JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

8.    This Court has personal jurisdiction over Defendant because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in New York, including decisions regarding the design, manufacture, marketing, advertising, selling, and distributing of the Products by Defendant, and Defendant purposefully availed itself of the benefits and protections of New York by marketing, advertising, selling, and distributing the Products in New York.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant is subject to the court's personal jurisdiction and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in New York.

## PARTIES

10.     Plaintiff Kelliann Bolash is a citizen and resident of Pennsylvania, residing at 2202 Green Ridge Drive, Warrington, PA 18976.

11.     Plaintiff Geneva Goldstein is a citizen and resident of Pennsylvania, residing at 260 Charles Street, Southampton, PA 18966.

12.     Plaintiff Deborah Johnson is a citizen and resident of Pennsylvania, residing at 2091 Carver Street, Philadelphia, PA 19125.

13.     Plaintiff Ingrid Nin is a citizen and resident of Pennsylvania, residing at 319 Whites Road, E1, Lansdale, PA 19446.

14.     Plaintiff Jules Purnell is a citizen and resident of Pennsylvania, residing at 1820 Roberta Avenue, Abington, PA 19001.

15.     Defendant Deva Concepts, LLC is a Delaware corporation with its principal place of business at 75 Spring Street, New York, NY 10012.

## FACTUAL ALLEGATIONS

### A.  The Defect – Common to All Class Members

16.     Defendant designs, manufactures, markets, advertises, sells, and distributes "DevaCurl" branded products (the "Products"), including, but not limited to, "DevaCurl No-Poo Original" non-lathering conditioning cleanser, "DevaCurl One Condition Original" conditioner, "DevaCurl Light Defining Gel", "DevaCurl Low-Poo Original" cleanser, "DevaCurl Low-Poo Delight" cleanser, "DevaCurl No-Poo Decadence" cleanser, "DevaCurl One Condition Delight"

conditioner, "DevaCurl One Condition Decadence" conditioner, "Melt into Moisture Mask," "Styling Cream," "DevaCurl Leave-In Decadence" conditioner, "Super Stretch Coconut Curl Elongator," "Wavemaker," and "DevaCurl Ultra Defining Gel," to consumers throughout the United States.

17.    Defendant's cleanser (a shampoo alternative) and conditioner Products are intended to be scrubbed into the customer's wet hair and then rinsed out. The cream, gel, and other Products are intended to be worked into curly hair in order to enhance shape, shine and bounce, reduce frizzing, and promote healthy hair.

18.    Defendant markets the Products as healthy alternatives to shampoo and other hair care products for people with curly hair, "free of harsh ingredients," and a "game-changing alternative to traditional shampoo."

19.    The Products are sold at a premium price because they are marketed as superior to traditional shampoos, conditioners, and other products. Defendant's representations that the Products are superior, commanding a premium price, include:

    a.    The Products are "Sulfate Free"

    b.    The Products will "gently cleanse"

    c.    The Products are not "harsh" or made with "harsh ingredients"

    d.    The Products will give "your curls what they need and nothing they don't"

    e.    The Products will keep hair from drying out

20.    Defendant encourages customers to use the Products frequently: "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"

21.    When used as directed, an inherent design and/or manufacturing defect in the Products causes scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

Customers experience hair falling out during and immediately after using the Products as directed. These excessive adverse effects are not de minimis, minor, common, or expected. Consumers who suffer hair loss often lose a substantial percentage of their hair and are left with bald spots and/or burns and scabs on their scalps. As a result, beyond the cost of the Products, consumers are forced to undertake a variety of costly efforts to regain their hair and mask the ill and adverse effects of the Products. Plaintiffs and Class members have suffered injury in fact and loss of money and/or property as a result of purchasing and using the Products.

22.     Defendant has known for years that the Products are dangerous and defective, yet has taken no action to warn the Public, recall the Products, or compensate the vast majority of its purchasers. Instead, it continues to falsely and fraudulently promote the Products' claimed safe, healthy, and nourishing qualities. Thousands of consumer complaints report that the Products, when used as directed, cause disturbing and distressing injuries, including scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

23.     Defendant provides absolutely no disclosure or warning about these severe consequences of which Defendant has knowledge. Instead, as described in the allegations, Defendant makes several assertions regarding the Products' purported safe, healthy and nourishing qualities.

24.     Defendant's marketing, advertising, labeling, packaging, and other representations do not state, and/or they omit, that the Products cause scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

25.     Defendant's website misleadingly claims that excessive shedding is normal and not caused by the Products: "If you have curly hair, chances are you've dealt with hair shedding. For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal. But,

what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding." "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."

26.    Defendant's website misleadingly claims that excessive shedding is common for people with curly hair—the Products' primary intended customers: "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts."

27.    Defendant's website misleadingly claims that excessive shedding is also caused by "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."

28.    Defendant's website misleadingly claims that excessive shedding is not preventable: "Can I prevent shedding? In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned."

29.    Defendant's website misleadingly offers recommendations to reduce shedding— none of which are to stop using the Products: "How can I lessen the shedding? 1. Find the right cleanser and conditioner for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding. 2. Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to clarify and exfoliate. 3. Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like Wash Day Wonder) before cleansing and finger detangling afterwards can make a world of difference."

30.    Defendant made the misrepresentations and omissions alleged above with knowledge or reckless disregard that they were false or misleading and that they would likely induce a reasonable customer into purchasing the Products.

31.    A reasonable customer would understand Defendant's marketing, advertising, labeling, packaging, and other representations to mean that the Products will make the hair and scalp healthier, not unhealthier from scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

32.    A reasonable customer would understand Defendant's marketing, advertising, labeling, packaging, and other representations to mean that the Products would not cause scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

33.    A reasonable customer would rely on Defendant's misrepresentations and omissions in choosing whether to purchase the Products due to Defendant's apparent and purported superior knowledge and expertise of the Products.

34.    Plaintiffs and Class members would not have purchased the Products if they knew that the Products could or would make their hair unhealthy from scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

35.    By marketing, advertising, selling, and distributing the Products with the misrepresentations and omissions alleged above, Defendant falsely warranted that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

36.    Plaintiffs and Class members have been injured and sustained damages as a result of their purchase of the Products which did not conform to Defendant's representations and which cause scalp irritation, hair loss, excessive shedding, hair thinning, and balding that Defendant did not warn about.

**B. Plaintiff Factual Allegations**

37.    Plaintiff Kelliann Bolash purchased DevaCurl Arc Angel Gel in June 2018, and later purchased DevaCurl Ultra Defining Gel, from Ulta Beauty. Plaintiff Bolash relied on Defendant's representations of the Products when making her purchase, including being specially designed for curly hair, promoting healthy hair, having no "harsh" ingredients, and being "sulfate free." Plaintiff Bolash did not know and had no reason to believe that the Products could cause any adverse effects when she purchased them. Since June 2018, Plaintiff Bolash used the Products five to six times per week, following the directions on the label. In or around September and October 2019, Plaintiff Bolash began experiencing severe scalp irritation, dandruff, and hair loss, including constant itching and large clumps of hair falling out when washing, brushing, or styling her hair. Plaintiff Bolash's dermatologist and gynecologist also found that her hormone levels were changing and was prescribed medicine to address this. Plaintiff Bolash stopped using the Products in or around February 2020 after learning from news stories that other people experienced the same adverse effects and that DevaCurl Products were responsible for her scalp irritation, dandruff, and hair loss. Plaintiff Bolash has never used any other hair products that have caused scalp irritation, dandruff, and hair loss.

38.    Plaintiff Geneva Goldstein purchased DevaCurl Low-Poo, One Condition Original, and Light Defining Gel on August 23, 2018 from Ulta Beauty. Plaintiff Goldstein relied on Defendant's representations of the Products when making her purchase, including being specially designed for curly hair, promoting healthy hair, having no "harsh" ingredients, and being "sulfate free." Plaintiff Goldstein did not know and had no reason to believe that the Products could cause any adverse effects when she purchased them. Since August 2018, Plaintiff Goldstein used the Products every day, following the directions on the label. In or around November 2019, Plaintiff

Goldstein began experiencing severe scalp irritation and hair loss, including constant itching and large clumps of hair falling out when washing, brushing, or styling her hair. Plaintiff Goldstein had her thyroid tested (which returned negative) due to the alarming hair loss. Plaintiff Goldstein has had to use conditioning masks and have her hair cut to try to control the scalp irritation and hair loss caused by the Products. Plaintiff Goldstein stopped using the Products in or around February 2020 after learning from news stories that other people experienced the same adverse effects and that DevaCurl Products were responsible for her scalp irritation and hair loss. Plaintiff Goldstein has never used any other hair products that have caused scalp irritation and hair loss.

39.    Plaintiff Deborah Johnson first received DevaCurl No-Poo Original and One Condition Original as a Christmas gift in 2018. Since then, Plaintiff Johnson has made approximately 20-25 purchases of DevaCurl Products from Target. Plaintiff Johnson relied on Defendant's representations of the Products when making her purchases, including being specially designed for curly hair, promoting healthy hair, having no "harsh" ingredients, and being "sulfate free." Plaintiff Johnson did not know and had no reason to believe that the Products could cause any adverse effects when she purchased them. Since December 2018, Plaintiff Johnson used the Products weekly, following the directions on the label. In or around late 2019, Plaintiff Johnson began experiencing severe scalp irritation and hair loss, including constant itching and large clumps of hair falling out when washing, brushing, or styling her hair. Plaintiff Johnson has considered having her hair cut to stop the hair loss but fears that it may not grow back. Plaintiff Johnson stopped using the Products in or around January 2020 after learning from news stories that other people experienced the same adverse effects and that DevaCurl Products were responsible for her scalp irritation and hair loss. Plaintiff Johnson has never used any other hair products that have caused scalp irritation and hair loss.

40.    Plaintiff Ingrid Nin purchased DevaCurl No-Poo Original, One Condition Original, Ultra Defining Gel, Frizz-Free Volumizing Foam, Buildup Buster, and Styling Cream in February 2018 and March 2019 from Sephora, online and in-store, in New York. Plaintiff Nin relied on Defendant's representations of the Products when making her purchases, including being specially designed for curly hair, promoting healthy hair, having no "harsh" ingredients, and being "sulfate free." Plaintiff Nin did not know and had no reason to believe that the Products could cause any adverse effects when she purchased them. Since February 2018, Plaintiff Nin used the Products three to four times per week, following the directions on the label. In or around April and May 2019, Plaintiff Nin began experiencing severe scalp irritation, dandruff, and hair loss, including constant itching, pain, and large clumps of hair falling out when washing, brushing, or styling her hair. Plaintiff Nin stopped using the Products in or around February 2020 after learning from news stories that other people experienced the same adverse effects and that DevaCurl Products were responsible for her scalp irritation and hair loss. Plaintiff Nin has never used any other hair products that have caused scalp irritation and hair loss.

41.    Plaintiff Jules Purnell purchased DevaCurl Low-Poo Delight and One Condition Delight in or around late 2017 or early 2018 from Ulta Beauty and/or Amazon. Plaintiff Purnell relied on Defendant's representations of the Products when making his purchases, including being specially designed for curly and/or wavy hair, promoting healthy hair, having no "harsh" ingredients, and being "sulfate free." Plaintiff Purnell did not know and had no reason to believe that the Products could cause any adverse effects when he purchased them. Since late 2017 or early 2018, Plaintiff Purnell used the Products every day, following the directions on the label. In or around 2019, Plaintiff Purnell began experiencing severe scalp irritation and hair loss, including constant itching, large clumps of hair falling out when washing, brushing, or styling his hair,

excessive buildup, and chalky and greasy scalp. Plaintiff Purnell stopped using the Products on January 15, 2020 after learning from news stories that other people experienced the same adverse effects and that DevaCurl Products were responsible for his scalp irritation and hair loss. Plaintiff Purnell was prescribed finasteride to treat the hair loss caused by the Products. Plaintiff Purnell has never used any other hair products that have caused scalp irritation and hair loss.

### C. Common Factual Allegations

42.    Thousands of customers who purchased and used DevaCurl Products as directed have reported scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

43.    ABC News reported that stylist and author Stephanie Mero, who used the Products as directed and recommended them to her customers and social media followers for four years, stopped using the Products and told her customers and followers to do the same after she and her customers experienced scalp irritation, hair loss, excessive shedding, hair thinning, and balding.

44.    A Facebook group created by Ms. Mero for people who experienced scalp irritation, hair loss, excessive shedding, hair thinning, and balding from using DevaCurl Products called "Hair Damage & Hair Loss from DevaCurl – You're not CRAZY or ALONE!" has over 50,000 members.

45.    Complaints on the Internet about DevaCurl date back to 2011 or earlier, including:

    a.    December 5, 2011: "Has anyone experienced hair loss when using Deva Curl No Poo, Condition One, and Angel? A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has course 4a thick hair. Thanks!" This post also has numerous replies from other customers who experienced scalp irritation, hair loss, excessive shedding, hair thinning, and balding from using DevaCurl Products, including:[1]

        • November 1, 2013: "it happens to me, too. I'm using Deva Products, and for the last 3 months, I'm losing hair handful after handful!"

---

[1] https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products

- November 1, 2013: "It happened to me using the no poo, because of the wheat protein (I'm a gluten free gal). Can't say that this would be the same case for you. Try switching up your products to see if it still happens. I used their low poo and one condition without any problems."

- March 24, 2014: "I've been experiencing this also! I'm a little freaked out as I'm getting married in September, and I'm afraid I won't have any hair left by then! I've been using CG method for about 3 years. Was using WEN but found it to be too expensive to keep up. I switched to Deva about a year ago. I've been using Lo-Poo once a week, then One condition and styling cream every other day. Lately, I've been taking gobs of hair out of the shower drain. I haven't changed meds, or anything else that I can think of, so I'm wondering what's going on. I'd make a switch to something else, but I want to be sure I'm still 100% sulfate and silicone free. Any suggestions?"

b. March 20, 2016: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which I've NEVER had a problem with before. I also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?" This post also has numerous replies from other customers who experienced scalp irritation, hair loss, excessive shedding, hair thinning, and balding from using DevaCurl Products.[2]

- December, 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

- November 4, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large

---

[2] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473

clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair."

- November 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!"

- November, 6, 2019: "Hi - so glad I found your post and many others about how Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me . She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair ! If anyone has a shampoo they recommend let me know . For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back . Good luck to you & everyone out there who experienced what I did - I wish we could all sue them !!!"

- November 8, 2019: "Me too! I thought it was menopause but it's Deva Curl products! There's a Facebook group about the issue too. I've emailed Deva Curl to return my products for a refund. Hope they will be responsible enough to do at least a refund. Horrible hair loss! Even my daughter had horrible hair loss. "

- September 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!! and Deva Curl... thanks for that medical bill!"

- September 4, 2019: "Yes. I used the No Poo Shampoo and Conditioner for two months. Every time I used these products my hair fell out in clumps during the shampoo and conditioning process. Initially, I thought this was me loosing dead hair, but it was more than that. I discontinued use and my hair slowed down dramatically in falling out. I've continued to use the styling products, but I'm questioning this now. Some days my hair looks amazing, and other days these products make my hair look terrible (i.e. stringy, frizzy, broomstick dry, distorted curl patterns). I don't have heat damage because I love wearing my hair flowy and curly, so it's not that. I'm very confused by these experiences! Overall, I'm not convinced it's worth the money. I've been reading about other women who've had similar experiences, which is alarming. I hope all of us continue to share. Granted, there are pros to the styling products, but the cons are pushing me away. I've watched the videos on how to use the products and I'm skilled at styling my hair, but all of this isn't adding up for me. I hope this helps!"

- August 15, 2019: "I have had the exact same issues. When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue."

- August 13, 2019: "I had the same reaction, I never really had dandruff until using devacurl. I bought the shampoo & conditioner & didn't finish either. My head was super itchy along with dandruff & hair-loss. It did make my hair a little curlier but overall I thinks it's a terrible product."

- May 19, 2019: "Yes! My hair is thin, fine, frizzy, and curly. Deva curl took half of the little bit of hair I had! I'm so upset! I finally grew my hair long. And now I have to crop it!"

- August 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and Scalp Issues from Deva Curl Products - You are not Alone! We hope that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they belived in that did this to them!"

- April 10, 2019: "I'm having the exact same problem right now!!!!"

- April 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same."

- March 24, 2019: "This can't be a coincidence. So I started using the no-poo almost exclusively on my wash days except for once a month when I used build up buster. Before that I alternated with the low poo Every other wash day and I never experienced shedding. Now that I started using mostly noo poo I'm seeing crazy shedding and breaking. I just switched to Oidad VitalCurl and can't report on results but first impressions my scalp feels clean and my hair looks nice. I also read online that noo-poo in hard water areas can cause PH imbalances in the hair, which can lead to shedding. I know I have hard water so I'm hoping by using new brands I'll be able to use DevaCurl again someday because for the first 2 years it was great."

- February 10, 2019: "I've used DivaCurl for a while and wonder now if it's making my hair thin out. It may be because I'm an little older, but I never had a problem before. The no-poo option works well for me because sulfates dry out my hair really bad. I think I'll switch over to Carol's Daughter, Mixed Chicks, or Shea Moisture to see what happens"

- February 7, 2019: "I finally had to stop using their products, which broke my heart because they made my hair so beautiful...I really loved my unruly, curly, red Irish hair for the first time ever. I used it for probably two years. I started noticing my hair thinning, which was disturbing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding when my hair was wet. My ponytail is barely anything now, and my long hair (which I took such a long time to grow and care for) is limp and straggly looking when I don't take great care to fluff it up with thickening products. I was losing clumps of hair not just in the shower (where I would find whole chunks wrapped around my hands), but all over my bathroom floor, my bed, my couch...literally anywhere I had been, there was hair to clean up. . Horrifying at any age, and especially in your mid twenties. I have also developed very sensitive spots on my scalp, where I feel "pinpricks" in the front whenever wearing a ponytail (no matter how loose it is).I finally saw a dermatologist that specialized in women's hair loss. She agreed I had hair loss, but could not give a definitive answer as to why and started me on spironolactone to suppress any excess androgen (although my hormone levels were tested and found to be normal). Around the same time I switched from Deva products to more generic (but curly-girl friendly) products. After a couple months, I started to notice I had probably 1/5 the amount of hair loss, and it finally seemed normal. No more sweeping up hair from the bathroom floor every single day.I was able to purchase the Deva gel again

(the one I had been using in the interim shaped my curls nicely, but left it too frizzy and they fell out quickly). Each time I use this, I am right back to crazy clumps of hair in the shower and on the floor again. I realized something in the Devacurl *has* to be contributing to my hair loss over the last two years, and especially the last year before I finally got medical help. I don't know if it's an allergy or what, I have no known problems. But it's sort of a relief to see other people reporting these problems, too.If anyone has recommendations for products with similar hold and frizz-taming capability, I really miss loving my hair. It used to be my proudest feature (after a lifetime of hating and fighting it), and now I feel like it's something I dislike about myself again."

- December 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone has any detangling recommendations - not just products, but techniques too, I'm happy for them."

- April 5, 2019: "Good morning, I could do, use your help. I'm going through the exact same thing. Except, I have never used this product. I was just wondering if you ever found a solution to your hair loss?"

- October 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands."

- February 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different including parting all over... very unhappy and nervous , I am going to stop using it and see if it make a difference!"

- August 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see

16

if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either! I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl. So it had to be switching to Deva Curl. I also only wash my hair once a week. So I know i'm not over washing it. I was also using the buildup buster every 2 washes. I am nearly in tears from how much hair it caused me to lose.I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing! I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So I'm having to trim them 3 times a week. Ugh. Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys."

- September 22, 2016: "Wow! You lasted longer than me. I find Deva Curl to be too heavy for the hairstyle I want. Also, couldn't get my scalp clean with it. It used to cause oily spots.I feel that hair sheds everyday. You just notice it a lot more during shampoo'ing. Some people are not washing their hair for days so then it may seem like a lot of hair shedding at once."

- May 2, 2019: "Me too I have never had thin hair its so thin and limp and disgusting. Im so sad"

- September 22, 2016: "I feel like i have been loosing a lot of hair. I notice its thinner. When i use my no poo shampoo and conditioner, tons of hair comes out. I am curious too if thats the problem. For now i am going to use my shea moisture shampoo and conditioner to see if shedding slacks off."

- February 7, 2018: "I use every three days and my hair is shedding REALLY bad"

46.    The high number of frequent and detailed complaints dating back to 2011 or earlier indicate that the problems caused by DevaCurl Products were known to Defendant, yet Defendant did nothing to address these problems and continued to conceal from the Public and consumers the inherent Defect of the Products and the adverse effects from using the Products as directed.

47.     DevaCurl released a statement in or around February 2020 which acknowledged the complaints about DevaCurl Products but refused to remedy or take responsibility for the problems and even reasserted that the Products are totally safe.

## CLASS ALLEGATIONS

48.     Plaintiffs, individually and on behalf of all others, bring this class action pursuant to Fed. R. Civ. P. 23.

49.     The Class is defined as follows:

**Nationwide Class:** All natural persons in the United States and its territories who purchased one of the Products.

**Pennsylvania Subclass:** All natural persons in Pennsylvania who purchased one of the Products.

**New York Subclass:** All natural persons in New York who purchased one of the Products.

50.     The Class excludes the following: Defendant, their affiliates, and their current and former employees, officers and directors, and the Judge assigned to this case.

51.     Plaintiffs reserve the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

52.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. There are thousands of Class members, evidenced by Defendant's sales volume, revenue, and profit throughout the United States. The Class is ascertainable by records in Defendant's possession.

53.     *Commonality*: Questions of law or fact common to the Class include, without limitation:

a.   Whether Defendant failed to comply with its warranty;

b.   Whether Defendant's conduct constitutes a breach of applicable warranties;

18

c. Whether the Products causes scalp irritation, hair loss, excessive shedding, hair thinning, and balding when used as directed;

d. Whether the Products are defective and contain defective designs;

e. Whether the Products are defectively manufactured;

f. Whether and when Defendants knew or should have known that the Products cause scalp irritation, hair loss, excessive shedding, hair thinning, and balding when used as directed;

g. Whether Defendant has been unjustly enriched by the conduct described herein:

h. Whether the Products are mislabeled;

i. Whether the Products are unsafe;

j. Whether Defendant's marketing, advertising, and sale of the Products is an unfair or deceptive practice;

k. Whether Defendant's acts, omissions, or misrepresentations of material facts violate certain state consumer and deceptive practice acts including the UTPCPL;

l. Whether customers of the Products are at greater risk of hair loss or other health risks;

m. Whether Plaintiffs and Class members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions, or misrepresentations of material facts;

n. Whether purchasers of the Products are entitled to damages or other relief; and

o. Whether Plaintiffs and Class members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of the relief.

54.    *Typicality*: The claims or defenses of Plaintiffs are typical of the claims or defenses of the Class members. Class members were injured and suffered damages in substantially the same manner as Plaintiffs, Class members have the same claims against Defendant relating to the same course of conduct, and the Class members are entitled to relief under the same legal theories asserted by Plaintiffs.

55.    *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in

the prosecution of complex class actions including, but not limited to, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

56.    *Predominance*: Questions of law or fact common to Class members predominate over any questions affecting only individual members. Common questions such as the extent, nature, causes, results, scale, and health effects of the Defect, Defendant's knowledge and concealment of the Defect, Defendant's representations and warranties regarding the Products and the Defect, and Defendant's liability predominate over individual questions such as measurement of economic damages.

57.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the Class is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

58.    *Manageability*: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

59.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

60.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

61.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## TOLLING OF STATUTES OF LIMITATIONS

62.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

63.     Plaintiffs and Class members had neither actual nor constructive knowledge of the facts constituting their claims for relief until recently.

64.     Plaintiffs and Class members had no ability to determine or reason to suspect that the Products were defective or mislabeled before such fact was made public.

65.     Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the unlawful conduct alleged herein until recently.

66.     Defendant is estopped from relying upon any statutes of limitations by reason of their fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitations are tolled by such conduct.

67.     Defendant did not inform Plaintiffs or Class members, and Plaintiffs and Class members had no reason to discover until recently, that the Products were defective or mislabeled.

68.     As a result of Defendant's omissions and misrepresentations, Plaintiffs and Class members did not know that the Products were defective or mislabeled.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Stat. Ann. § 201-1, *et seq.*

69.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

70.     Defendant expressly and impliedly misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

71.     Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

72.     Defendant knew that their misrepresentations and omissions were materially false or misleading.

73.     Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

74.     Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

75.     These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

76.     The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

77.     Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

78.     Defendant's conduct constitutes unfair competition and/or unfair or deceptive acts in violation of 73 Pa. Stat. Ann. § 201-3.

79.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

<u>COUNT II</u>
**DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF**
**N.Y. Gen. Bus. Law § 349,** *et seq.*

80.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

81.    Defendant expressly and impliedly misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

82.    Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

83.    Defendant knew that their misrepresentations and omissions were materially false or misleading.

84.    Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

85.    Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

86.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

87.    The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

88.    Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

89.    Defendant's conduct constitutes unfair competition and/or unfair or deceptive acts in violation of N.Y. Gen. Bus. Law § 349.

90.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT III
### FRAUD

91.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

92.    Defendant expressly and impliedly misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

93.    Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

94.    Defendant knew that their misrepresentations and omissions were materially false or misleading.

95.    Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

96.    Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

97.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

98.    The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

99.    Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

100.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

**COUNT IV**
**NEGLIGENCE**

101.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

102.    Defendant had a duty to exercise reasonable care in designing and manufacturing the Products.

103.    Defendant had a duty to ensure that the marketing, advertising, labeling, packaging, and representations of the Products were truthful, accurate, and not deceptive or misleading.

104.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

105.    Defendant failed to exercise reasonable care in designing and manufacturing the Products, evidenced by the Products' Defect.

106.    Defendant expressly and impliedly misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

107.    Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

108.    Defendant knew that their design and manufacturing processes would result in the Defect and cause the Products to be unsafe.

109.    Defendant knew that their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

25

110.    Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

111.    Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

112.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

113.    The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

114.    Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

115.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

<u>COUNT V</u>
**NEGLIGENCE – FAILURE TO WARN**

116.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

117.    Defendant had a duty to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products.

118.    Defendant had a duty to ensure that the marketing, advertising, labeling, packaging, and representations of the Products were truthful, accurate, and not deceptive or misleading.

119.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

26

120.    Defendant failed to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products, evidenced by the lack of a warning concerning the Products' Defect on the label.

121.    Defendant expressly and impliedly misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

122.    Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

123.    Defendant knew that their design and manufacturing processes would result in the Defect and cause the Products to be unsafe.

124.    Defendant knew that their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

125.    Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

126.    Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

127.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

128.    The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

129.    Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

130.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT VI
## NEGLIGENCE – FAILURE TO TEST

131.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

132.    Defendant had a duty to exercise reasonable care in testing the Products for any potential unsafe effects.

133.    Defendant had a duty to ensure that the marketing, advertising, labeling, packaging, and representations of the Products were truthful, accurate, and not deceptive or misleading.

134.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

135.    Defendant failed to exercise reasonable care in testing the Products for any potential unsafe effects, evidenced by the widespread injuries caused by the Products.

136.    Defendant expressly and impliedly misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

137.    Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

138.    Defendant knew that their design and manufacturing processes would result in the Defect and cause the Products to be unsafe.

139.    Defendant knew that their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

140.    Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

141.    Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

142.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

143.    The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

144.    Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

145.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT VII
## STRICT LIABILITY – DESIGN DEFECT

146.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

147.    Defendant had a duty to exercise reasonable care in designing the Products.

148.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

149.    Defendant failed to exercise reasonable care in designing the Products, evidenced by the Products' Defect.

150.    The Defect causes the Products to be unreasonably dangerous due to the Products causing hair loss, hair breakage, head sores, and severe skin reaction when used as intended or in a reasonably foreseeable manner.

151.   Defendant is strictly liable to Plaintiffs and Class members for the dangerous design of the Products.

152.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT VIII
## STRICT LIABILITY – MANUFACTURING DEFECT

153.   Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

154.   Defendant had a duty to exercise reasonable care in manufacturing the Products.

155.   Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

156.   Defendant failed to exercise reasonable care in manufacturing the Products, evidenced by the Products' Defect.

157.   The Defect causes the Products to be unreasonably dangerous due to the Products causing hair loss, hair breakage, head sores, and severe skin reaction when used as intended or in a reasonably foreseeable manner.

158.   Defendant is strictly liable to Plaintiffs and Class members for the dangerous manufacturing of the Products.

159.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT IX
## STRICT LIABILITY – FAILURE TO WARN

160.   Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

161.    Defendant had a duty to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products.

162.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

163.    Defendant failed to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products, evidenced by the widespread injuries caused by the Products.

164.    The Defect causes the Products to be unreasonably dangerous due to the Products causing hair loss, hair breakage, head sores, and severe skin reaction when used as intended or in a reasonably foreseeable manner.

165.    Defendant is strictly liable to Plaintiffs and Class members for failure to warn of the dangerous effects of the Products.

166.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

**COUNT X**
**STRICT LIABILITY – FAILURE TO TEST**

167.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

168.    Defendant had a duty to exercise reasonable care in testing the Products for any potential unsafe effects.

169.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

170.    Defendant failed to exercise reasonable care in testing the Products for any potential unsafe effects, evidenced by the lack of a warning concerning the Products' Defect on the label.

171.    The Defect causes the Products to be unreasonably dangerous due to the Products causing hair loss, hair breakage, head sores, and severe skin reaction when used as intended or in a reasonably foreseeable manner.

172.    Defendant is strictly liable to Plaintiffs and Class members for failure to test for the dangerous effects of the Products.

173.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

<u>COUNT XI</u>
**UNJUST ENRICHMENT**

174.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

175.    Defendant expressly and impliedly warranted and misrepresented to Plaintiffs and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe hair care and styling products.

176.    Defendant failed to notify, omitted, and concealed from Plaintiffs and Class members that the Products were defective, mislabeled, and unsafe.

177.    Defendant knew that their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

178.    Defendant knew that their misrepresentations and omissions would induce Plaintiffs and Class members to purchase the Products.

179.    Defendant distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

180.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiffs and Class members reasonably and justifiably relied upon when purchasing the Products.

181.    The Products did not conform to Defendant's representations because the Products were defective, mislabeled, and unsafe.

182.    Plaintiffs and Class members would not have paid for the Products if they knew that the Products did not conform to Defendant's representations.

183.    Defendant knowingly accepted and retained profits from Plaintiffs and Class members' purchases of the Products.

184.    It would be unjust for Defendant to retain such profits due to Defendant's misrepresentations and omissions that induced Plaintiffs and Class members to pay for the Products.

185.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

186.    Plaintiffs and Class members are entitled to restitution from Defendant for the purchase of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

a.    For an order certifying the Class, appointing Plaintiffs as the Representatives of the Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

b.    For a declaration that Defendant is liable for each and every cause of action enumerated above;

c.    For damages, restitution, and/or refund of all funds acquired by Defendant from Plaintiffs and Class members as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

d.  Payment of costs and expenses of suit herein incurred;

e.  Both pre-and post-judgment interest on any amounts awarded;

f.  Payment of reasonable attorneys' fees and expert fees;

g.  Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.

Dated: March 4, 2020                      Respectfully submitted,

*/s/ Jeffrey L. Koenig*

Jeffrey L. Koenig
HECHT KLEEGER & DAMASHEK, P.C.
19 West 44th Street, Suite 1500
New York, NY 10036
T: (212) 490-5700
E: koenig@lawyer1.com

Charles E. Schaffer
Nicholas J. Elia
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
T: (215) 592-1500
F: (215) 592-4663
E: CSchaffer@lfsblaw.com
    NElia@lfsblaw.com